UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS EDUARDO EREU GIL,<br>Petitioner(s),<br>v.<br>JULIO HERNANDEZ, et al.,<br>Respondent(s). | CASE NO. C26-3302-KKE<br>ORDER GRANTING HABEAS PETITION |

Petitioner filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigration and Customs Enforcement ("ICE") violated his due process rights. Dkt. No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 8, 11. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. No. 1 ¶ 44. Petitioner entered the United States on July 23, 2024, at or near the Paso Del Norte Port of Entry in El Paso, Texas, after presenting for his scheduled CBP One Appointment. Dkt. No. 10-1 at 3; Dkt. No. 1 ¶ 45. Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A) and served with a Notice to Appear and an I-94 form. *Id.* ¶ 44; Dkt. No. 8 at 2; Dkt. No. 10-2 at 2. Thereafter, Petitioner moved to Seattle, Washington, obtained work authorization, applied for asylum, obtained stable employment, and married a United States citizen. Dkt. No. 4 ¶¶ 7–10.

In April 2026, Petitioner was involved in a hit-and-run car accident. Dkt. No. 1 ¶ 49. Petitioner states that as he was driving and doing deliveries for work, a car hit him from behind while he was stopped at a sign. Dkt. No. 4 ¶ 11. After trying to speak with the individual that hit him, Petitioner states that he went back to his apartment, where the police later arrived and arrested him. *Id.* According to Petitioner, he later "paid a fee for the case, [and] the case went away." *Id.*

On August 31, 2026, Petitioner was arrested while attending a regularly scheduled check-in with ICE in Tukwila, Washington. Dkt. No. 1 at ¶ 50. Petitioner was told by ICE officers that he was being detained because of the hit-and-run case, but Petitioner "was confused because [he] did everything that [he] was supposed to do for that case and it was closed." Dkt. No. 4 ¶ 12. That same day, Petitioner entered the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Also on that same day, the Government issued a written notice terminating Petitioner's parole ("Parole Termination Notice" or "Notice") at approximately 3:41 pm. Dkt. No. 10-3 at 2–3. Petitioner filed the pending habeas petition on September 14, 2026. Dkt. No. 1.

## II. ANALYSIS

### A. Legal Standard

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B. Petitioner's Detention was Unlawful.

The Government argues that it was entitled to detain Petitioner without a prior individualized determination and notice because Petitioner's status reverted to that of an "arriving alien" subject to mandatory detention under Section 1225(b) because his humanitarian parole

automatically expired on April 24, 2026. Dkt. No. 8 at 5. Alternatively, even if Petitioner's parole did not automatically expire, the Government contends that it was terminated on August 31, 2026, upon written notice. *Id.*

DHS regulations set forth conditions under which the DHS Secretary and his delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5. Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice." *Id.* §§ 212.5(e)(1), (e)(2)(i). Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). In all other instances, parole "shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i). Termination of parole with notice occurs only "upon accomplishment of the purpose for which parole was authorized" or when an authorized DHS official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*; *see* 8 U.S.C. § 1182(d)(5)(A) (requiring the Secretary of Homeland Security determine "the purposes of such parole … have been served" prior to returning a paroled non-citizen to custody). In other words, where it is not automatic, termination of parole requires both (1) written notice to the noncitizen, and (2) a finding by a DHS official with authority that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*; *Arevalo-Hortua v. Hernandez*, No. 26-cv-2994, 2026 WL 2797986, at *4 (W.D. Wash. Sep. 18, 2026); *Dieng v. Hermosillo*, No. 26-cv-190, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026).

Here, the Government argues that Petitioner's August 31, 2026, arrest and detention are the automatic consequence of the expiration of Petitioner's parole on April 24, 2026. Dkt. No. 8 at 3. To begin with, the Government's inconsistent records undermine this claim. Petitioner's I-213 only states that Petitioner entered the United States on July 23, 2024, and was paroled "for

two years" but does not specify a specific end date. Dkt. No. 10-1 at 3. Presumably, this would be July 23, 2026, which is two years after July 23, 2024. But the Government contends, without explanation or supporting documentation, that Petitioner's parole instead expired on April 24, 2026—a period of only one year and nine months. Dkt. No. 8 at 3; *see also* Dkt. No. 9 at 2 (DO Bloom asserting that Petitioner "paroled into the United States under INA § 212(d)(5)(A), 8 U.S.C § 1182(d)(5)(A), until April 24, 2026"). This expiration date appears to run counter to the I-213. Moreover, the Government's argument that Petitioner's parole automatically expired seemingly conflicts with its later issuance of a written Parole Termination Notice under 8 C.F.R. § 212.5(e)(2)(i) on August 31, 2026, after Petitioner was detained. As Petitioner aptly notes, if his parole had expired on April 24, as the Government contends, or on July 23, then there would have been no active parole to "terminate." Given that the parole document is absent from the record, the evidence concerning the purported expiration date is inconsistent, and the Government's subsequent issuance of a notice under § 212.5(e)(2)(i) conflicts with its assertion that parole had already expired under § 212.5(e)(1), the Court concludes that the Government has failed to establish that Petitioner's parole expired prior to his re-detention on August 31, 2026. Regardless, "even if the record clearly showed that Petitioner's parole had expired," this Court joins the majority of courts in this District that "have rejected the Government's parole expiration argument and expressed skepticism that this automatic revocation without any notice to non-citizens comports with due process." *Azuaje-Gamez v. Warden, Nw. Ice Processing Ctr.*, No. 2:26-CV-02988-JHC, 2026 WL 2922004, at *4 (W.D. Wash. Sept. 29, 2026) (citation modified) (citing cases); *see also Kumar v. Noem*, No. C26-294-SKV, 2026 WL 668335, at *4 (W.D. Wash. Mar. 10, 2026) ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'" (citation omitted)).

Alternatively, the Government argues that even if Petitioner's parole did not automatically expire, he "was provided with written notice of termination under 8 C.F.R. § 212.5(e)(2)(i)." Dkt. No. 8 at 5. The Parole Termination Notice stated that:

> On June 24, 2026, you were arrested by Washington State Patrol at Everett, WA, upon a charge of Hit/Run Attended Vehicle in violation of RCW 4652.020(5) WA. As a result of this arrest and pending criminal charge, ICE has determined that you no longer warrant parole and that continued parole is not appropriate.
>
> Accordingly, ICE has determined that the purpose for which your parole was authorized has been accomplished or that neither humanitarian reasons nor significant public benefit warrant your continued parole. Your parole is therefore terminated, and you are to be returned to ICE custody pending further immigration proceedings and/or removal from the United States.
>
> Dkt. No. 10-3 at 2.

The Parole Termination Notice is dated August 31, 2026—the same day Petitioner was arrested and detained by ICE—and the attached Certificate of Service attests that the Notice was served upon Petitioner at 3:41 pm that day. Dkt. No. 10-3 at 3.

The Parole Termination Notice does not appear to satisfy the requirements of 8 C.F.R. § 212.5. First, the Notice was served upon Petitioner the same day of his arrest—and, based on Petitioner's account, *after* Petitioner had already been arrested and detained by ICE. *See* Dkt. No. 11 at 6 ("[Petitioner] was not provided notice or a hearing prior to his re-detention. It appears that on the same day [Petitioner] was re-detained, ICE terminated his parole around 3:41 PM." (citation omitted)). "If, as the Government insists, Petitioner's detention was the consequence of the termination of his parole and service of the [Notice] terminated his parole, then the consequence (i.e., detention) occurred *before* its predicate (i.e., termination)." *Kozlenkko v. Hernandez*, No. C26-3147-KKE, 2026 WL 2905404, at *4 (W.D. Wash. Sept. 28, 2026) (international citations omitted). As numerous courts have explained, this is insufficient for purposes of providing notice under § 212.5(e)(2). *See, e.g.*, *Uisimbayev v. Scott*, No. 2:26-CV-03061-JHC, 2026 WL 2797987,

at *5 (W.D. Wash. Sept. 18, 2026) ("The Court is skeptical that, where, as here, ICE already had custody of Petitioner, decided to cancel parole due to the arrest, conducted the interview, and then served an NTA, the notice requirement of § 212.5(e)(2) was satisfied."); *Fedoniuk v. Warden of Nw. ICE Processing Ctr.*, No. C26-2984-MLP, 2026 WL 2836511, at *4 (W.D. Wash. Sept. 22, 2026) (finding written notice of parole termination was "untimely" and "insufficient" where Petitioner received it after he was taken in custody"); *A.A. v. Crawford*, No. 3:26CV301, 2026 WL 1601798, at *11 (E.D. Va. June 4, 2026) ("Thus, even to the extent that these documents could have served as notice of revocation of parole, the fact that they were served *after* Mr. A's arrest means that they could not have operated as notice that his humanitarian parole would be terminated in advance of his arrest.").

In addition to failing to satisfy the regulation's procedural requirements, the Notice appears to be substantively defective. Here, the apparent basis for the termination of Petitioner's parole is the misdemeanor hit-and-run: the Notice states that "[a]s a result of this arrest and *pending criminal charge*, ICE has determined that you no longer warrant parole and that continued parole is not appropriate." Dkt. No. 10-3 at 2 (emphasis added). And the Form I-213 explained that Petitioner was "arrested by WSP-Everett on June 24, 2026, due to a pending charge of hit/run attended vehicle. These charges violate the conditions of his parole." Dkt. No. 10-1 at 3; *see also* Dkt. No. 9 ¶¶ 5–6 (DO Bloom stating that "an Assistant Field Office Director ('AFOD') terminated Petitioner's parole" "[b]ased on the arrest and the danger to the community it represented" where the "charge appears to still be pending"). But the record clearly reflects that the hit-and-run case was closed on June 29, 2026, without the filing of criminal charges, such that there has never been a "pending" criminal charge, let alone at the time of Petitioner's arrest. As Petitioner notes, a simple docket search on the publicly available Washington Courts website demonstrates that his June 24th case is "[c]losed." Dkt. No. 11-1 at 2. Additionally, Washington State Patrol records,

which are also publicly available, reflect only an arrest, but no pending criminal charges. Dkt. No. 11-1 at 4 (noting that "THE ARREST LISTED MAY HAVE BEEN BASED ON PROBABLE CAUSE AT THE TIME OF ARREST[.] PROBABLE CAUSE ARRESTS MAY OR MAY NOT RESULT IN THE FILING OF CHARGES."). Petitioner's counsel also submitted a declaration containing an official case summary record from the Snohomish County District Court showing that on "June 29, 2026, [Petitioner]'s [hit-and-run] matter was dismissed and closed due to a 'criminal complaint not filed within 72 hours.'" Dkt. No. 12. Thus, the record makes clear that no charges were pending when Petitioner was arrested by ICE on August 31, 2026.[1]

Similarly, the Parole Termination Notice's conclusory statement that "ICE has determined that the purpose for which your parole was authorized has been accomplished or that neither humanitarian reasons nor significant public benefit warrant your continued parole" does not pass muster. Dkt. No. 10-3. The Notice does not explain why the purpose of parole has been accomplished, particularly where Petitioner's asylum claim is still pending. Dkt. No. 4 ¶¶ 7, 14. *See Y-Z-L-H*, 792 F. Supp. 3d at 1145 ("Respondents also concede that Petitioner is still in § 1229a removal proceedings. These facts show that the purpose of Petitioner's parole had not been served at the time of the purported termination."). And the public benefit and humanitarian reasons still warrant Petitioner's presence in the United States. According to the "Parole Directive" issued by DHS in 2009, "if an asylum-seeker establishes her identity and that she presents neither a flight risk nor a danger to the public, her detention 'is not in the public interest,' and thus ICE 'should, absent additional factors ... parole the [noncitizen].'" *Id.* at 1145 (quoting *Mons v. McAleenan*, 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019)). The Parole Termination Notice is absent of any

---

[1] The Court is deeply troubled by DO Bloom's assertion, submitted in his declaration under penalty of perjury on September 29, 2026, that Petitioner's "charge" "for the crime of Hit and Run Attended Vehicle" "appears to still be pending" despite publicly available (and easily accessible) information to the contrary. Dkt. No. 9 at 2.

findings that Petitioner currently presents a flight risk or danger to the public. Although DO Bloom states in his declaration (which is dated September 29, 2026) that Petitioner's parole was terminated "[b]ased on the arrest and the danger to the community it represented," these "post-hoc rationalizations" "cannot justify an agency's actions." *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *13 (D. Or. Aug. 21, 2025). Therefore, because nothing suggests that the purpose of Petitioner's parole has been served or that humanitarian reasons no longer justify it, the Government complied with neither clause of 8 U.S.C. § 1182(d)(5)(A).

In sum, the Court concludes that the Government's termination of Petitioner's parole and re-detention of Petitioner violated federal statute and regulations. Although the Government issued written notice, the record makes clear that "such notice was neither timely nor sufficient." *Fedoniuk*, 2026 WL 2836511, at *4.

**C. Petitioner's Detention Violates Due Process**

1. <u>Re-detention must comport with due process, regardless of the detention statute that applies.</u>

Even if the Government had followed the parole regulations, Petitioner contends that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution. Respondents contend that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2). Dkt. No. 8 at 3. "However, the Court need not consider whether there is a lawful statutory basis for Petitioner's current detention." *Wang v. Warden of Nw. Ice Processing Ctr.*, No. C26-2933-MLP, 2026 WL 2963559, at *2 (W.D. Wash. Oct. 1, 2026). That is because "[c]ourts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies." *Blanco v. Hermosillo*, Case No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026). Thus, "the fact that the

Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation modified). Where Petitioner challenges his re-detention in August 2026 based on due process grounds (Dkt. No. 1 at 12–24), the Government's arguments regarding its purported statutory authority to detain Petitioner are irrelevant, and the Court need not consider them. *See, e.g.*, *Singh v. Noem*, No. 2:26-CV-00651, 2026 WL 925627, at *2 (W.D. Wash. Apr. 6, 2026) ("The Due Process Clause applies to [Petitioner]—who was deprived of his liberty when ICE revoked his release and re-detained him—regardless of whether he is subject to detention under § 1225(b)(1), § 1225(b)(2), or § 1226(a)."); *Wang*, 2026 WL 2963559, at *2; *Sarwari v. Wamsley*, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026). Accordingly, the Court turns to the merits of Petitioner's due process claim.

2. <u>Under the *Mathews* factors, Petitioner's re-detention does not comport with due process.</u>

Petitioner contends that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

a. *Petitioner has a protected interest in his liberty*

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, where Petitioner was released on parole in July 2024, and had been living freely in his community for over two years before he was re-detained (Dkt. No. 4 ¶¶ 5–9), "the constitution does not countenance fictional erasure of his actual presence in this country—or his concomitant due process rights." *Dieng*, 2026 WL 411857, at *5. Since his release on parole, Petitioner has settled in Seattle, found stable employment, and married a United States citizen. Dkt. No. 4 ¶¶ 7–10. Thus, "this Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey* [*v. Brewer*, 408 U.S. 471 (1972)]." *Torres v. Hermosillo*, No. 25-CV-2687, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1136

("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."). The Court therefore finds the first *Mathews* factor favors Petitioner.

b. *The risk of erroneous deprivation of liberty is high.*

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. The circumstances of Petitioner's arrest and detention on August 31, 2026, underscore the high risk of erroneous deprivation of his liberty absent a pre-detention hearing. As outlined in Section II.B. above, several procedural protections apply to humanitarian parole decisions, and one or more were not followed in this case. The Government's "failure to follow its own regulations ... demonstrate[s] a substantial risk of erroneous deprivation." *Ortega v. Scott*, 2026 WL 1905841, at *4 (W.D. Wash. July 2, 2026) (quoting *Caceres v. Joyce*, 813 F. Supp. 3d 407, 417 (S.D.N.Y. 2025)). And even accounting for Petitioner's arrest associated with the hit-and-run, "courts typically draw a distinction where there has only been an arrest or pending charges, and … have repeatedly found that the government violated due process regardless of a non-citizen's pending criminal charges when they are re-detained without notice or an opportunity to be heard." *Garcia Radillo v. Scott*, 2026 WL 2168044, at *3 (W.D. Wash. July 28, 2026) (collecting cases).

The Government argues that when his term of humanitarian parole expired or was terminated, Petitioner reverted to his status as an arriving noncitizen at the threshold of the country, and that as "a noncitizen seeking initial entry to the United States," he had "'no entitlement' to *any* legal rights, constitutional or otherwise, other than those expressly provided by statute." Dkt. No. 8 at 7 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). But courts have repeatedly "questioned and rejected the extension of this 'entry fiction' to challenges involving a noncitizen's immigration detention." *Rivero Guzman v. Hernandez*, No. C26-3138-

MLP, 2026 WL 2883385, at *3 (W.D. Wash. Sept. 25, 2026). *See, e.g.*, *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable); *Torres*, 2026 WL 145715, at *4 (acknowledging the "Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the detention of a person living freely, for years, within the United States[.]" (citation omitted)). Thus, the second factor also favors Petitioner.

c. <u>*The Government's interest in detaining Petitioner without process is low.*</u>

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. As this Court has ruled repeatedly, the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Thus, the third and final *Mathews* factor favors Petitioner.

In sum, the Court's review of the *Mathews* factors confirms that Petitioner's re-detention does not comport with due process.

**D. The Proper Remedy is Release.**

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release under the same conditions that applied before he was re-arrested and re-detained. *See, e.g.*, *Arzola v. Facility Adm'r*, No. 2:26-CV-00717-DGE, 2026 WL 1045508, at *7 (W.D. Wash. Apr. 17, 2026) (ordering release where humanitarian parole was unlawfully revoked); *Torres*, 2026 WL 145715, at *8 (same); *Camacho-Gutierrez*, 2026 WL 195758, at *5 (same). Furthermore, as explained in this order, the parole statute, its implementing regulations, and due process require that Petitioner receive proper notice before his parole may be terminated. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether re-detention is appropriate. At any future pre-deprivation hearing, in order to re-detain Petitioner, the Government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.[2] *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1092 (E.D. Cal. 2025).

[2] As Petitioner notes, the Government does not oppose this request. Dkt. No. 11 at 13.

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS as follows:

1) Petitioner shall be released from custody NO LATER THAN OCTOBER 10, 2026, on the same conditions of parole previously imposed before his August 2026 arrest.

2) Petitioner shall not be re-detained, absent urgent circumstances, without compliance with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e).

3) Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether re-detention is appropriate. At any future pre-deprivation hearing, in order to re-detain Petitioner, the Government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

4) The Government shall file a declaration NO LATER THAN OCTOBER 13, 2026, documenting Petitioner's release in compliance with this order.

5) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 9th day of October, 2026.

Kymberly K. Evanson
Kymberly K. Evanson
United States District Judge